[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
On June 29, 1990, the plaintiff, Rosemary Lopes, filed a twelve count complaint against 37 defendants, including the Connecticut Light and Power Company, which now moves for summary judgment. On June 11, 1988, the plaintiff was seriously injured when she attempted to use a rope swing over Candlewood Lake. In count nine, the only count directed at this defendant, the plaintiff alleges that the defendant wilfully or maliciously failed to warn her of a dangerous condition, use, structure or activity.
On January 24, 1991, the defendant filed an amended answer, denying: that it had knowledge of the existence of the rope swing; that it had a duty to warn against its use, and, that its alleged failure to warn caused the plaintiff's injuries. Additionally, the defendant filed two special defenses with its answer, alleging that the plaintiff's own negligence or recklessness caused her injuries.
On September 8, 1993, the defendant filed a motion for summary judgment with certified affidavits and deposition testimony. On December 2, 1993, the plaintiff filed an objection to the defendant's motion for summary judgment with a certified counteraffidavit and two exhibits, a photo of the accident site and a medical report. On December 6, 1993, the defendant filed a reply brief in response to the plaintiff's objection to the motion for summary judgment.
The purpose of summary judgment is to determine if the pleadings and affidavits "`show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (Citation omitted.) Spencer v. Good Earth Restaurant Corp., 164 Conn. 194, 197, 319 A.2d 403 (1972). "Summary judgment procedure is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full dress trial." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,375, 260 A.2d 596 (1969). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan CT Page 2986 v. Borkowski, 206 Conn. 495, 500, 535 A.2d 793 (1988). Generally, summary judgment is inappropriate "where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." (Citation omitted.) Batick v. Seymour, 186 Conn. 632, 646-47, 538 A.2d 1031 (1988).
The moving party has the burden of showing "the absence of any genuine issue as to all the material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law." Spencer v. Good Earth Restaurant Corp., supra. "Because the burden is on the movant, the evidence must be viewed in the light most favorable to the nonmovant and he is given the benefit all favorable inferences that can be drawn." Evans Products Co v. Clinton Building Supply Inc., 174 Conn. 512, 516, 391 A.2d 157
(1978).
"To satisfy his burden the movant must make a showing that it is quite clear what the truth is and that it excludes any real doubt as to the existence of any genuine issue of material fact." Spencer v. Good Earth Restaurant Corp., supra, 197-98. "The test is resolved . . . by applying to the established facts the same criteria as used in determining whether a party would be entitled to a directed verdict on the same facts." Id., 198. "In Connecticut, a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." Id.
"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." Burns v. Hartford Hospital, 192 Conn. 451, 455,472 A.2d 1257 (1984). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." Id. Therefore, "[m]ere assertions of fact are insufficient to establish the existence of a material fact and therefore, cannot refute evidence properly presented to the court under Practice Book 380." Id. Because hearsay statements are inadmissible, they are insufficient to establish the existence of a material fact. Sheridan v. Board of Education, 20 Conn. App. 231, 240,565 A.2d 882 (1989).
The defendant argues: that General Statutes 52-557g grants immunity to a landowner whose land is available free of charge to the public for recreational use; that under General Statutes 52-557h, CT Page 2987 it would be liable only for a wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; that wilful or malicious conduct must be intentional, not only as to the conduct, but as to the resulting injury as well; and that the plaintiff has not alleged any facts that could prove intentional misconduct or any intent to harm the plaintiff. The defendant has offered the affidavits of its land management administrator and its senior claims investigator who aver that the defendant had no prior knowledge of the existence of the rope swing. Finally, the defendant argues that any failure to warn was not the proximate cause of the defendant's injury because the deposition testimony of the plaintiff and a witness shows that the plaintiff fully understood and appreciated the danger involved in the activity.
The plaintiff argues that there is an issue of material fact as to whether the defendant knew or should have known of the existence of the rope swing. Further, the plaintiff submits a counteraffidavit, in which she states that she learned of a previous accident that occurred on that rope swing. Additionally, she states that, since her accident, a person "who grew up in the area" told her that the rope swing was dangerous. Lastly, the plaintiff claims that the rope swing "constituted a trap."
The defendant, in its reply brief, argues that the counteraffidavit is insufficient to show the existence of genuine issues of material fact because it was not based on personal knowledge as required by Practice Book 381, and it contained hearsay, which would not be admissible at trial. Further, the defendant states that even if the counteraffidavit were in proper form, it would only establish negligence, not wilful or malicious conduct.
It is uncontested that the defendant is immune from liability for injuries that occur on property used by the public free of charge for recreational purposes, such as Lake Candlewood. General Statutes 52-557g. Exceptions to this immunity are provided in General Statutes 52-557h, which provides:
 Nothing in sections 52-557f to 52-557i, inclusive, limits in any way the liability of any owner of land which otherwise exists: (1) For wilful or malicious failure to guard or warn against a dangerous condition, use, CT Page 2988 structure or activity. . . ."
General Statutes 52-557h. The courts have not yet interpreted "wilful or malicious" failure to warn with respect to 52-557h. However, the phrase "wilful or malicious," has been interpreted under a companion recreational immunity statute, 52-557j, to mean conduct which "must encompass both the physical act proscribed by the statute and its injurious consequences." Warner v. Leslie-Elliot Constructors, Inc., 194 Conn. 129, 138, 479 A.2d 231 (1984). Additionally, Connecticut law is replete with interpretations of the phrase "wilful misconduct" in other contexts. See Mingachos v. CBS, Inc., 196 Conn. 91, 102-03, 491 A.2d 368 (1985).
 Wilful misconduct has been defined as intentional conduct designed to injure for which there is no just cause or excuse. Its characteristic element is the design to injure either actually entertained or to be implied from the conduct and circumstances. Not only the action producing the injury but the resulting injury also must be intentional.
(Internal quotation marks omitted; citations omitted.) Dubay v. Irish, 207 Conn. 518, 533, 542 A.2d 711 (1988). "[T]he mere knowledge and appreciation of a risk, short of substantial certainty is not the equivalent of intent." (internal quotation marks omitted.) Mingachos v. CBS, Inc., supra, 103. "The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong." Id. Further, "gross negligence might present an instance of serious misconduct, [but] it could never present a case of wilful misconduct, as our definition of wilful misconduct clearly indicates and as the authorities so hold." Greene v. Metal Selling Corporation, 3 Conn. App. 40, 45, 484 A.2d 478 (1984). "No misconduct which is thoughtless, needless, inadvertent or of the moment and none which arises from an error of judgment [sic] can be wilful . . . ." Id., citing Gonier v. Chase Companies, Inc., 97 Conn. 46,56, 115 A. 677 (1921).
The affidavits filed by the defendant aver that the defendant neither had knowledge of the rope swing prior to the accident, nor had knowledge that the plaintiff was going to be using the rope swing. The defendant declares further that it did not intend to CT Page 2989 harm the plaintiff. (Defendant's Exhibits A and B.) The plaintiff's counteraffidavit states:
 In the absence of warning or prohibition signs of any kind and given the obvious long-time existence and use of the rope swing as aforesaid, I concluded that I could safely use same with knowledge and consent of the authority in charge/owner of the lake and shore.
. . .
 Since my injuries of June 11, 1988, I have received information and knowledge of an exactly similar accident that occurred on July 29, 1986 . . . .
. . .
 Also, Mr. Edward S. Caco . . . grew up in the area, swam in the lake, and for years witnessed the use of the rope which was known to him to be a hazardous venture because of the hidden and submerged rocks beneath the surface of the water.
Because wilful and malicious conduct refers not only to the act, but also to its injurious consequences, to show a wilful or malicious failure to warn, the plaintiff must prove that the defendant knew of the existence of the rope swing, knew with relative certainty that it was dangerous, and intended for an injury to occur by failing to post a warning.
The plaintiff has offered no evidence to show that the defendant knew of the rope swing. Hearsay contained in the counteraffidavit cannot be used to refute the defendant's affidavits. Even if the hearsay offered was admissible, it shows only that the plaintiff learned of a prior rope swing related injury and that someone who lived in the area thought the swing was hazardous. The plaintiff's counteraffidavit does not refute the defendant's statements that the defendant had no knowledge of either the rope swing, the prior injury, or the conditions in the area of the rope swing. The plaintiff merely asserts a question of fact without offering evidence to support such claim. CT Page 2990
Further, even if the plaintiff established prior knowledge on the part of the defendant, mere awareness of the rope swing or a previous injury may amount to negligent conduct, but not wilful or malicious behavior. Even though summary judgment is generally inappropriate on issues of intent, the plaintiff has offered no evidence to prove the defendant intended an injury to occur or knew with substantial certainty that someone would be harmed.
Accordingly, as a matter of law, the plaintiff has not established a wilful or malicious failure to warn. Therefore, since no genuine issue of material fact exists, the defendant's motion for summary judgment on count nine is granted.
Robert A. Martin, Judge